**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
In re:                            ) Chapter 11
                                  )
ADVANCED MARKETING SERVICES,      ) Case No. 06-11480 (CSS)
INC., a Delaware corporation,     ) (Jointly Administered)
et al.                            )
              Debtors.            )
                                  )
SIMON & SCHUSTER, INC.,           )
                                  ) Adv. Proc. No.07-50004(CSS)
              Plaintiff,          )
                                  )
     v.                           ) Related Adv. Doc. No.8
                                  )
ADVANCED MARKETING SERVICES,      )
INC.,                             )
                                  )
              Defendant.          )
```

# OPINION[1]

Mark D. Collins
Russell C. Silberglied (Argued)
Paul N. Heath
Marcos A. Ramos
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899

Suzzanne S. Uhland
Austin K. Barron
Alexandra B. Feldman
O'Melveny & Myers LLP
275 Battery Street
San Francisco, CA  94111

Proposed Counsel for Debtors
and Debtors in Possession

Kurt F. Gwynne (Argued)
Kimberly E.C. Lawson
REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE  19899

Paul S. Arrow
BUCHALTER NEMER
1000 Wilshire Blvd.,
15th Floor
Los Angeles, CA  90017

Counsel for Wells
Fargo Foothill, Inc.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

| | |
|---|---|
| Mark Minuti<br>Jeremy W. Ryan<br>SAUL EWING LLP<br>222 Delaware Avenue<br>Suite 1200<br>P.O. Box 1266<br>Wilmington, DE  19899 | Bruce Buechler (Argued)<br>LOWENSTEIN SANDLER P.C.<br>65 Livingston Avenue<br>Roseland, NJ  07068<br><br>Proposed Counsel for<br>the Official Committee<br>Of Unsecured Creditors |

Craig A. Wolfe (Argued)
Robert L. LeHane
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178

Counsel for Plaintiff,
Simon & Schuster, Inc.

Dated: January 22, 2007

SONTCHI, J.

This is an adversary proceeding brought by Simon & Schuster, Inc. ("S&S") to reclaim goods, pursuant to section 546(c) of the Bankruptcy Code. Before the Court is the *Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 8] (the "TRO Motion")*, which is opposed by the Debtors and the Debtors' secured lenders.[2]  Because the goods that S&S seeks to reclaim are subject to prior secured liens, S&S is unable at this time to establish a likelihood of

---

[2] The Official Committee of Unsecured Creditors takes no position in connection with the TRO Motion.

2

success on the merits of its reclamation claim.[3]  Thus, for the reasons stated below, the TRO Motion is denied without prejudice.

### I. **Statement of Facts**[4]

On December 29, 2006, Advanced Marketing Services, Inc. ("AMS") and two of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  That same day, S&S sent a reclamation demand to AMS. On January 5, 2007, S&S commenced this adversary proceeding by filing a *Complaint for Reclamation of Goods Pursuant to 11 U.S.C. § 546(c) and Related Relief* (the "Complaint").  The Complaint seeks (i) reclamation of goods in the aggregate amount of $5,105,629.65 that S&S alleges were received pre-petition by AMS (the "Goods"), (ii) immediate payment to S&S of certain administrative expense claims, and (iii) an

---

[3] In addition, S&S has failed to establish the existence of any irreparable harm or that the balance of equities favors entering an injunction.

[4] The facts set forth herein are derived from the: (i) *Affidavit of Donald F. England In Support of the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 9]*; (ii) *Affidavit of Curtis R. Smith Submitted in Support of Advanced Marketing Services, Inc.'s Opposition to the Emergency Application of Simon & Schuster for Temporary Restraining Order Pursuant to Bankruptcy Rule 7065 [Docket No. 18]*; and (iii) *Declaration of Daniel Whitwer of Wells Fargo Foothill, Inc. Pursuant to 28 U.S.C. §1746(2)*, all of which were admitted into evidence at the hearing on the TRO Motion.

accounting of the Goods.[5]  As of January 16, 2007, approximately $808,000 of inventory subject to S&S's reclamation claim remained in the Debtors' possession.  On January 17, 2007, the Court held a hearing on the TRO Motion.

AMS is a wholesaler of general interest books to membership warehouse clubs, including Costco Wholesale Corporation, SAM's Club, and BJ's Wholesale Club, as well as certain specialty retailers, e-commerce companies, traditional bookstores and bookstore chains.  AMS obtains most of its inventory directly from publishers, primarily on a fully returnable basis.  It also sells such books primarily on a fully returnable basis.  S&S is one of the largest third-party publishers from whom AMS obtains books.  As with most of its suppliers, AMS obtains books from S&S on a fully returnable basis.

The Debtors and the lenders (the "Senior Lenders") are parties to that certain Loan and Security Agreement, dated as of April 27, 2004 (as amended from time to time, the "Senior Facility").  Wells Fargo Foothill, Inc. ("Foothill") is the Senior Lenders' agent under the Senior

---

[5] At the hearing on the TRO Motion, S&S's counsel stated that S&S now seeks reclamation of goods in the aggregate amount of $6,014,311.97. S&S did not submit any evidence, however, in support of the statement of counsel.  Thus, for purposes of the TRO Motion, S&S is seeking reclamation of goods in the aggregate amount of $5,105,629.65.

Facility. The Debtors' obligations under the Senior Facility are secured by a floating lien on substantially all of the Debtors' assets, including inventory. As a result, the Senior Lenders' first priority security interest extends to the Goods that are the subject of the Complaint. The Senior Facility is an asset-based lending agreement that provides for a revolving line of credit (the "Revolving Loans") up to a maximum commitment level of $90 million. Availability under the Senior Facility is determined by a borrowing base formula based upon the Debtors' accounts receivable and inventory subject to adjustments and reserves established by Foothill and the Senior Lenders. The Senior Lenders assert, and the Debtors have stipulated and agreed, that, as of the Petition Date, the Debtors were obligated to the Senior Lenders for the principal amount drawn on the Revolving Loans plus accrued and unpaid interest and certain additional unpaid fees and expenses in an amount not less than $41,514,347.58 (collectively, the "Senior Indebtedness"). The Senior Facility imposed numerous restrictions on the Debtors' ability to access their cash. Prior to the Petition Date virtually all of the Debtors' cash from operations was swept daily into an account controlled by Foothill and

applied to the loans outstanding, then readvanced as loans in accordance with the borrowing base formula.

On December 29, 2006, the Debtors filed a motion seeking an interim order for post-petition financing. On January 3, 2007, this Court entered an interim order authorizing the Debtors to obtain post-petition financing (the "Interim DIP Order"). Pursuant to the Interim DIP Order and the related DIP Loan Agreement (as defined in the Interim DIP Order), the Debtors are able to continue to receive financing from Foothill and the other Senior Lenders, including cash advanced and other extensions of credit, but now in an aggregate principal amount of $75 million (the "DIP Loan"). The DIP Loan is governed by the DIP Loan Agreement and the Interim DIP Order. The terms of the Debtors' post-petition financing did not extinguish the Debtors' obligations under the Senior Facility or discharge or release any related security interests. Instead, the DIP Loan Agreement is a "creeping roll up" and contemplates the Debtors' satisfaction of their pre-petition obligations to the Senior Lenders through application of Cash Collateral (as defined in the Interim DIP Order), which is derived primarily from the proceeds from the sale of the Debtors' inventory, all before payment of Debtors' post-petition obligations under the DIP Loan.

The DIP Loan is secured by a lien on all of the Debtors' pre-petition, present and future assets. Pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, this lien is senior to all other liens other than validly perfected Pre-Petition Liens (as defined in the Interim DIP Order). In addition, pursuant to section 364(c)(1) of the Bankruptcy Code, the Senior Lenders are granted a superpriority administrative expense claim senior to all other administrative claims.

The DIP Loan Agreement also provides that the Pre-Petition Liens granted to the Senior Lenders continue in full force and effect, and secure repayment of all obligations owed to the lenders under the DIP Loan Agreement. Specifically, Section 17.10 provides that:

> Each Borrower hereby ratifies, adopts, confirm and agrees that (i) the Senior Agreement and each document comprising the Senior Facility is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects in relation to this Agreement except that on and after the Closing Date all references in any such document comprising the Senior Facility to "the Agreement", "thereto", "thereof", "thereunder" or words of like import referring to the Senior Agreement shall mean this Agreement; and (ii) *to the extent that any such document comprising the Senior Facility purports to assign or pledge to the Senior Agent of the benefit of the Senior Lenders a security interest*

7

> *in or lien on, any collateral as security for the Senior Obligations, such pledge, assignment or grant of the security interest or lien is hereby ratified and confirmed in all respects in favor of Agent for the benefit of Lenders in connection with this Agreement and the Loan Documents to secure the Obligations.*

DIP Loan Agreement at §17.10 (emphasis added).

As of January 16, 2007, the Debtors' aggregate indebtedness under the Senior Facility and the DIP Loan is approximately $26.5 million. That amount is comprised of approximately $13 million under the Senior Facility and $13.5 million under the DIP Loan.

## II.    Jurisdiction

The Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §1334(b). This is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A), (E), (H), and (O).

## III.    Discussion

"Generally speaking, courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987). In order to grant a temporary restraining order, the Court "must be convinced

8

that the following factors favor granting preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

**A. <u>Probability Of Success On The Merits</u>**

In order to obtain injunctive relief, the movant must demonstrate a "strong probability of success on the merits of the litigation." *Phillips Petroleum Co. v. U.S. Steel Corp.*, 616 F. Supp. 335, 337 (D. Del. 1985). "The reclaiming seller has the burden of establishing each element of section 546(c) by a preponderance of the evidence." *Allegiance Healthcare Corp. v. Primary Health Sys. (In re Primary Health Sys.)*, 258 B.R. 111, 114 (Bankr. D. Del. 2001). Thus, S&S must establish that there is a strong probability that it will establish it has a right to reclaim the Goods under section 546(c) of the Bankruptcy Code. S&S has not met this burden.

The Goods are subject to the Senior Lenders' first priority pre-petition and post-petition liens and claims.

Section 546(c)(1), as amended in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), explicitly provides that the rights of a seller of goods are "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." 11 U.S.C. §546(c)(1). Accordingly, under the express language of §546(c)(1) of the Bankruptcy Code, as amended, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim.[6] For this reason alone, S&S has failed to establish it any likelihood of success in establishing it has a valid reclamation right under section 546(c) of the Bankruptcy Code.

Nonetheless, S&S argues that its reclamation claim is only subject to Foothill's pre-petition liens under the Senior Facility and since the Senior Facility will soon be satisfied through the "creeping rollup" under the DIP Loan, S&S ultimately will succeed on the merits of its reclamation claim. This argument fails for three reasons.

---

[6] The Court would reach the same result under section 546(c) as it existed prior to BAPCPA. *See Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 283-88 (B.A.P. 6th Cir. 2004) (pursuant to pre-BAPCPA section 546(c) of the Bankruptcy Code and UCC section 2-702, sellers' reclamation claims in respect of goods to debtors were subject to senior secured lenders' floating lien on such goods); *In re Primary Health Sys., Inc.*, 258 B.R. at 114 ("a creditor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC"); and *Gayley & Lord Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 270-71 (Bankr. SDNY 1999) (same).

First, it ignores the fact that the Senior Facility is still in place.  Although the Senior Facility may be satisfied at some future date, S&S has failed to establish when that will occur and, more importantly, whether any of the Goods subject to its reclamation claim will still be in the Debtors' possession at that time.

Second, this argument ignores the terms of the Interim DIP Order, which provide, among other things, that the pre-petition liens secure the post-petition indebtedness under the DIP Loan.  While this "cross-collateralization" provision may or may not be included in the final order approving the DIP Loan, it is contained in the Interim DIP Order, which was entered after notice to S&S.  Thus, as the matter stands today, the satisfaction of the Senior Facility is of no moment.  Even if the Senior Facility is satisfied, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim.[7]

Third, S&S's reliance on *In re Phar-Mor, Inc.*, 301 B.R. 482 (Bankr. N.D. Oh. 2003) in support of its argument is not persuasive.  *Phar-Mor* is easily distinguished from the case at hand.  In *Phar-Mor*, the prior secured lenders

---

[7] In addition, the adequate protection liens attach to the pre-petition collateral, including the Goods.

11

had already been paid in full from collateral other than the reclaimed goods. *Id.* The court in *Phar-Mor*, specifically stated

> these Vendors had reclamation claims that were subject to and not extinguished by the prior security interest of Pre-Petition Lenders. When a seller's right of reclamation is subject to the interest of a prior secured creditor, the value of that seller's claim depends on the actual disposition of the subject goods. Pre-Petition Lenders chose to release their security interests and were paid in full through the Interim and Final DIP Orders by the DIP Facility. Thus, the value of the Vendors' reclamation claims is not affected by the interests of Pre-Petition Lenders.

*Id.* at 497. That is simply not the case here. As set forth above, the Senior Lenders have not been paid in full, and S&S's reclamation claim is still subject to their interests. Moreover, the Senior Facility is being paid down, in part, through the sale of the Goods.

At the end of the day, S&S is doing little more than urging the Court to apply the doctrine of marshaling.[8] However, "unsecured creditors cannot invoke the equitable

---

[8] "Marshaling of assets applies when a senior secured creditor can collect on its debt against more than one property or fund held by the debtor but a junior secured creditor can only proceed against one of those sources. Assuming certain elements are met, the process then requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." *Pittsburgh-Canfield Corp.*, 309 B.R. at 291 (citations and emphasis omitted).

doctrine of marshaling." *Pittsburgh-Canfield Corp.*, 309 B.R. at 291. Moreover, the Senior Facility and the DIP Loan Agreement specifically provide that the lenders have no duty to marshal. Because marshaling does not apply to an unsecured creditor such as S&S, they cannot direct the Senior Lenders to satisfy their claim out of collateral other than the Goods.

Based on the foregoing, S&S has failed to establish there is a strong probability it will succeed on the merits of its reclamation claim. Thus, this factor weighs heavily against granting the TRO Motion.

### B. Irreparable Harm

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 93d Cir. 1989). "[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (citations omitted). Further, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Center, Inc. v.*

13

*General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). The Third Circuit has also noted "that a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Id.* (citing *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987).)

S&S argues that the relief it requests is necessary in order to prevent any buyer of AMS's assets from returning the Goods to S&S and demanding a credit, and to prevent S&S from incurring additional expenses for replacement goods to other distributors who are working to satisfy the demands of AMS's customers. AMS, under its contract with S&S, has obtained the Goods on a fully returnable basis – S&S cannot argue that it will be irreparably harmed by the exercise of the AMS's contractual rights in the future by either AMS or its assignee. Further, S&S's harm is capable of being remedied by monetary compensation. By its own statement, S&S is trying to prevent itself from incurring wrongful credits and additional expenses.

Therefore, because S&S has failed to establish the existence of any irreparable harm, this factor weighs against granting the TRO Motion.

### C. Balance of Equities

The third factor in the preliminary injunction analysis is the balancing of equities. In applying this

factor, "a court should consider whether granting the requested relief will result in greater harm to the party on whom it is imposed than its denial will have on the party who seeks it." *Farberware, Inc. v. Mr. Coffee, Inc.*, 740 F. Supp. 291, 304 (D. Del. 1990) (internal citations omitted.)

This factor is neutral in this case. There can be no question that the Debtors would be harmed by the imposition of an injunction. Similarly, allowing the Debtors to continue to sell the Goods will probably result in rendering S&S's reclamation claim worthless. Because S&S has the burden to establish that the balance of equities is in favor of granting the TRO Motion, however, the balancing of the equities weighs against granting the TRO Motion.

### D. The Public Interest

S&S argues that the TRO has an impact on the public interest by "preserving the value of the Goods and Plaintiff's right to reclaimation." The Court does not find this argument persuasive. S&S further argues that "the public interest benefits when all parties expect that courts require compliance with the express textual requirements of statutory law." This statement has absolutely no bearing on the case at hand. S&S has not met their burden of proving that they do in fact have any

15

statutory rights.  As discussed above, S&S's Motion does not establish the likelihood that S&S will succeed on the merits of the claim.  The Court finds that the public interest is simply not implicated in this commercial dispute among sophisticated parties.

## IV. Conclusion

This is a simple case.  Under the express language of §546(c)(1) of the Bankruptcy Code, as amended, the Senior Lenders' pre-petition and post-petition liens on the Debtors' inventory are superior to S&S's reclamation claim.  For this reason, S&S has failed to establish it any likelihood (let alone a probability) of success in establishing it has a valid reclamation right under section 546(c) of the Bankruptcy Code.  Moreover, S&S has failed to establish the existence of any irreparable harm.  Finally, S&S has failed to meet its burden of proof of establishing that the balance of equities support granting an injunction.  In short, all of the factors relevant in this case weigh against entering an injunction.[9]  Thus, the TRO Motion is denied without prejudice.

---

[9] As discussed above, the public interest factor is simply inapplicable to this case.